UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Severstal Dearborn, LLC,

      Plaintiff,

v.

Praxair, Inc.,

      Defendant.

_____/

Case No. 11-12211

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT PRAXAIR'S MOTION FOR PARTIAL SUMMARY JUDGMENT [34]**

Before the Court is Defendant Praxair, Inc's motion for partial summary judgment on Plaintiff Severstal Dearborn, LLC's claims for incidental, consequential, indirect, and special damages. (Dkt. 34.) Having reviewed the pleadings, the Court finds that a hearing is unnecessary and disposes of one pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). Because the Court finds that Defendant Praxair is reading the damages provision out of context and offers an incorrect interpretation of that provision, the Court DENIES Defendant's motion for partial summary judgment.

**I.   Facts**

In September, 2008, Plaintiff Severstal and Defendant Praxair entered into an Oxygen, Nitrogen, Hydrogen and Argon Supply Agreement (the "agreement"). (Compl. ¶ 8.) Under the agreement, Defendant Praxair was required to sell and deliver gases into Plaintiff Severstal's distributing systems. (*Id.* ¶ 9.)

Plaintiff Severstal states that it "owns and operates steelmaking operations in Dearborn, Michigan, where it produces hot and cold rolled and coated steel products for a number of industries, including the automotive industry." (Pl.'s Resp. at 3.) Plaintiff Severstal further represents that the gases it receives from Defendant Praxair are "critical to the steelmaking process." (*Id.*)

Defendant Praxair explains its operations at its Ecorse facility, where the incident giving rise to this litigation took place:

> [The] Ecorse facility takes in air from the atmosphere and, through a complex cryogenic distillation process, produces valuable industrial gases such as oxygen and nitrogen. Because of the heat generated by process equipment, the plant needs thousands of gallons of cooling water per minute to assist in producing the gases supplied under the [a]greement. The cooling water is drawn from the Detroit River. [The water] is pumped from and returned to the river through two roughly 1,000-foot long, 42" diameter pipes buried underneath a bulk materials storage lot operated by Detroit Bulk Storage[.] The 42" river water pipes then enter [Defendant] Praxair's property and supply the Ecorse [f]acility.

(Pl.'s Mot. for Partial Summ. J. at 2.) Defendant Praxair then gives its account of what has prompted this case:

> On January 28, 2011, a large pile of road salt weighing many thousands of tons stored on the Detroit Bulk Storage property next to Praxair's Ecorse facility caused a violent shift of the land beneath and near the pile. The land subsided and severed Praxair's cooling water pipes and an electric conduit running underground alongside the pipes.

(Pl.'s Mot. at 2.) When the pipes were cut, Defendant Praxair states that it lost its cooling water supply, which significantly impaired "its ability to supply oxygen and nitrogen to its customers, including Severstal." (*Id.*) Defendant Praxair then states it declared a "contingency," pursuant to and defined in Article 19 of the agreement. (*Id.*) Defendant

2

Praxair represents that it repaired the damaged pipes and ended the Article 19 contingency in March, 2012[1].  (*Id.*)

Plaintiff Severstal states that, without the gases from Defendant Praxair, it was forced to "take extraordinary emergency measures to prevent a catastrophic loss of property, and avoid potentially deadly hazards to its workers." (*Id.*)  Plaintiff Severstal adds that the gas shutdown "affected almost every aspect of its operations." (*Id.*)  The shutdown, Plaintiff Severstal maintains, resulted in substantial loss of work, increased labor costs, and forced Plaintiff Severstal to purchase alternative products from vendors other than Defendant Praxair to keep its plant in operation and avoid a "complete, catastrophic shutdown of its operations." (*Id.*)  Despite the measures taken, Plaintiff Severstal states that it incurred substantial damages.  (*Id.*)  Plaintiff Severstal further states that, under the agreement, in certain circumstances, a "contingency" provision goes into effect and Defendant Praxair may then charge "supplemental" prices for delivered gases–"prices far above those charged under normal circumstances." (*Id.*)  Plaintiff Severstal alleges that  Defendant Praxair charged it supplemental charges that approached $4 million that were not authorized under the agreement.  (*Id.*)

On April 15, 2011, Plaintiff Severstal filed its breach of contract complaint against Defendant Praxair in Michigan state court.  (Dkt. 1, Notice of Removal, Ex. A, Compl.)  On May 20, 2011, Defendant Praxair removed the case. (*Id.*)

---

[1]In its own terms, Plaintiff Severstal states that Defendant Praxair breached the agreement, in January, 2011, by failing to sell and deliver Plaintiff's oxygen and nitrogen requirements.  (Compl. ¶ 12.)  Plaintiff Severstal adds that Defendant Praxair further breached the agreement when it continued to invoice Plaintiff Severstal "at prices in excess of those allowed under Article 14 of the [a]greement." (*Id.* ¶ 13.)

## II.   Summary judgment standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."   *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).   Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).   "The court need consider only the cited materials, but it may consider other materials in the record."   Fed. R. Civ. P. 56(c)(3).

4

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.  Analysis

Defendant Praxair requests summary judgment on its claim that a sentence in Article 21.1 of the agreement precludes the recovery of incidental, consequential, indirect, or special damages that Defendant states Plaintiff Severstal seeks. Plaintiff Severstal opposes the request and argues that Defendant Praxair's reading is overly broad and alternatively, that Article 21.1 is ambiguous.

### A.  Michigan contract interpretation

Because this case is before the Court on diversity jurisdiction, the Court applies Michigan's substantive law. *Anton v. Nat'l Union Fire. Ins. Co. of Pittsburgh, PA*, 634 F.3d 364, 367 (6th Cir. 2011).

> In Michigan, the proper interpretation of a contract is a question of law . . . . The goal of contract construction is to determine and enforce the parties' intent on the basis of the plain language of the contract itself. Michigan courts examine contractual language and give the words their plain and ordinary meanings. If the language of the contract is unambiguous, the court construes and enforces the contract as written. . . . Only when contract language is ambiguous does its meaning become a question of fact.
>
> A contract is ambiguous if its words may reasonably be understood in different ways. In other words, a contract is ambiguous when its provisions

are capable of conflicting interpretations. Courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare ambiguity. Instead, contracts must be construed so as to give effect to every word or phrase as far as practicable. However, courts may not impose an ambiguity on clear contract language.

*Chungag v. Wells Fargo Bank, N.A.*, 11-1353, 2012 WL 2301653, at *2 (6th Cir. June 19, 2012) (citations omitted). Additionally, "[w]hen a contract, though poorly drafted or clumsily arranged, fairly discloses only one meaning, it is not ambiguous." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 817 N.W.2d 609, 616 (Mich.Ct.App. 2012) (on remand) (citations omitted). Also at play in this case is the doctrine of "noscitur a sociis." "Under the doctrine of *noscitur a sociis*, the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Petersen v. Magna Corp.,* 773 N.W.2d 564, 568, n 16 (Mich. 2009) (citation omitted). This doctrine requires a contract to be "construed as a whole, and its terms must be construed in context." *Ahrens,* 817 N.W.2d at 616 (citations omitted). "Thus, when reading the terms of a contract according to their commonly used meaning, courts must also consider that 'under the doctrine of *noscitur a sociis*, a word or phrase is given meaning by its context or setting.'" *Id.* (citation omitted).

## B. Defendant Praxair's offered damages interpretation is taken out of context of Article 21.1 and the entire agreement

Defendant Praxair seeks summary judgment on the limited issue of whether Article 21.1 of the agreement precludes the incidental, consequential, indirect, or special damages that it alleges Plaintiff Severstal seeks.[2] As a threshold issue, the Court must determine

---

[2]The Court notes that "[c]ontracting parties are [] free to limit remedies by agreement and contract terms limiting damages are valid unless found unconscionable." *National Fire. Ins. Co. v. Roofmaster Constr., Inc.*, 2005 WL 1030326, at *5 (E.D.Mich. Apr. 28, 2010)

whether the consequential damages provision is ambiguous.  Here, though, the Court does

not need to go beyond the threshold issue; the Court finds that, looking at the

consequential damages provision in connection with its surrounding sentences and the

contract as a whole, the provision is unambiguous and does not stand for the interpretation

that Defendant Praxair suggests.

    Section 21.1, Liability, provides:

> [Severstal] acknowledges that there are hazards associated with the storage,
> use and handling of argon, oxygen, hydrogen and nitrogen and [Severstal]
> agrees that its personnel concerned with argon, oxygen, hydrogen and
> nitrogen are aware of such hazards. [Severstal] shall be responsible for
> complying with all relevant reporting obligations under all applicable laws . .
> . resulting from the presence at [Severstal]'s Plant of argon, oxygen,
> hydrogen and nitrogen supplied under this [a]greement. [Severstal] shall be
> responsible for warning and protecting its employees, independent
> contractors and others exposed to the hazards posed by [Severstal]'s
> storage, use and handling of argon, oxygen, hydrogen and nitrogen.
> [Severstal] also assumes all responsibility for the suitability and the results
> of using oxygen, hydrogen, nitrogen and argon alone or in combination with
> other articles or substances and in any manufacturing process. [Severstal]
> will notify [Praxair] in advance of any anticipated construction, renovation, or
> change in operations in the area of the Meter and Receiver Site, [Praxair]'s
> Oxygen Pipeline, [] Nitrogen Pipeline, [] Hydrogen Pipeline or the Liquid
> Argon Storage System so that any hazards associated with same can be
> minimized.  Neither party will be liable to the other party for any loss or
> damage to the other's property which may occur because of the performance
> of this [a]greement regardless of which party may be negligent.  Neither party
> will be liable to the other party for any loss or damage to the other's property
> which may occur because of the performance of this Agreement regardless
> of which party may be negligent.  **Neither [Severstal] nor [Praxair] will be
> liable for any incidental, consequential, indirect or special damages or
> charges under this [a]greement.** [Severstal] will receive documents from

(Cleland, J) (citing *St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co.*, 320 N.W.2d 244,
247 (Mich.Ct.App. 1982)).  But "[u]nconscionability will rarely be found in a commercial
contract." *WXON-TV, Inc. V. A.C.Nielsen Co.*, 740 F.Supp. 1261, 1264 (E.D.Mich. 1990)
(Cohn, J.) (citing *U.S. Fibres v. Proctor & Schwartz, Inc.*, 509 F.2d 1043, 1048 (6th Cir.
1975)).

[Praxair], including [Praxair]'s Material Safety Data Sheet(s) containing [Praxair]'s safety and health information pertaining to argon, oxygen, hydrogen and nitrogen delivered hereunder and [Severstal] will incorporate such information into [Severstal]'s safety program. Each party hereby agrees to indemnify the other and hold the other harmless from any actions, lawsuits, demands, claims, losses, expenses, costs, including but not limited to legal fees, and damages, arising from the injury, illness or death of their respective employees while engaged in activities connected with this [a]greement, whether or not such injury, illness or death is claimed to have been caused by, resulted from, or was in any way connected with the negligence of the party to be indemnified.

(Pl.'s Resp., Ex. A., Agreement at 24-25) (emphasis added).

Defendant Praxair argues that the provision "[n]either Buyer nor Seller will be liable for any incidental, consequential, indirect or special damages or charges under this Agreement" in Article 21.1 of the agreement precludes the types of damages Plaintiff Severstal seeks.[3] (Def.'s Mot. at 1.)  Defendant Praxair maintains that "[t]he only material fact necessary to decide this motion is the existence of a clear and unambiguous consequential damage exclusion."  (*Id.* at 6.)

Plaintiff Severstal argues that Defendant Praxair's reading of the agreement is "overly broad" and that the agreement only excludes consequential damages "under certain conditions which are not applicable [here.]" (Pl.'s Resp. at 2.) Plaintiff Severstal alternatively argues that, at a minimum, the agreement "is ambiguous with respect to the recoverability of consequential damages[.]" (*Id.*)  Plaintiff therefore contends that Defendant Praxair's

---

[3]Defendant Praxair acknowledges that the agreement contains consequential damages exclusions in articles 16 and 24.  (Def.'s Mot. at 1, n 3.)  But Defendant explains that these exclusions do not apply to the dispute, as the exclusions relate to product specifications and third party purchasing.  (*Id.*)

8

motion is premature and that genuine issues of fact exist, which precludes summary judgment so early in the litigation. (*Id.*)

Here, Defendant Praxair has taken one sentence out of the article and argues in support of applying it to the entire agreement. Defendant Praxiar's reading of the sentence is overbroad and ignores the remainder of the article's sentences. Looking at Article 21.1 in its entirety, the Court finds that, as Plaintiff Severstal argues, Article 21.1 addresses liability in relation to the hazards of storing gases. (Agreement at 24.) The article begins, "[Plaintiff Severstal] acknowledges that there are hazards associated with the storage, use and handling of argon, oxygen, hydrogen and nitrogen and [Plaintiff Severstal] agrees that its personnel concerned with argon, oxygen, hydrogen and nitrogen are aware of such hazards." (*Id.*) The article continues to address the hazards and possible hazardous effects of working with the gases. (*Id.*) The article states that Plaintiff Severstal "shall be responsible for warning and protecting its employees" and others concerning the "hazards posed" by Severstal's "storage, use and handling" of the gases. (*Id.*) And the article states that Plaintiff Severstal "assumes all responsibility for the suitability and the results" of using the gases in Severstal's business. (*Id.*) The article next required Plaintiff Severstal to notify Defendant Praxair about any changes in construction, renovation, or change in operations so as to minimize "any hazards associated with the same." (*Id.* at 24-25.) The next sentence absolves either party from liability "for any loss or damages to the other's property which may occur because of the performance of this [a]greement regardless of which party may be negligent." (*Id.* at 25.) The next sentence is the sentence that Defendant Praxair states precludes the damages Plaintiff Severstal seeks: "Neither [Severstal] nor [Praxair]

will be liable for any incidental, consequential, indirect or special damages or charges under this [a]greement." (*Id.*)  The sentence immediately following again relates to safety.  (*Id.*)  And the sentence after that one absolves each party from liability "arising from the injury, illness or death of their respective employees while engaged in activities connected with this [a]greement" whether or not the injury was "caused by, resulted from, or was in any way connected with the negligence of the party to be indemnified."  (*Id.*)

Given the noscitur a sociis doctrine, the Court finds that the sentence at issue applies solely to those damages related to the hazards and hazardous effects of working among natural gases.   The liability provision is surrounded by a discussion of the hazards and hazardous effects of the gases.  The sole reasonable reading of the liability provision is that the parties agreed to absolve each other from liability for damages relating to hazards and hazardous effects.

The Court additionally points out that Defendant Praxair has not addressed the effect of the sentences surrounding the liability provision and has not offered any case law that would support their position.  The Court finds that Defendant Praxair has failed to persuade the Court that its offered interpretation is a reasonable or even plausible reading of the liability provision.

Further support for this position exists in the agreement's other articles, which also limit specific types of damages, as both parties point out.  *See Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 866 (Mich. Ct. App. 2008) (citation and quotation marks omitted, insertion in *Tenneco*) (stating, a "paragraph of a contract must be read as a whole and together with the remaining provisions of the [contract], and not by disassociating one

10

part thereof from the remainder."). *See also Cain Rest. Co. v. Carrois Corp.*, 273 F.App'x 430, 432 (6th Cir. 2008) (citation omitted, insertion in *Cain*) (stating, "Michigan rules of contract interpretation provide that '[c]onflicts between clauses should be harmonized, and a contract should not be interpreted so as to render it unreasonable.'").

Here, two other articles contain similar liability provisions. Article 16, "Specifications," addresses gas purity. (Agreement at 20.) This article states that it is the "exclusive remedy with respect to claims relating to the purity of oxygen, hydrogen, nitrogen or argon." (*Id.*) The article also contains, "[Praxair] will have no liability for any incidental, consequential, indirect or special damages hereunder." (*Id.*) Then the article contains an waiver of warranties, save for those expressly mentioned in Article 16. (*Id.*) Article 24, relating to purchases by Plaintiff Severstal from a third party, also contains a sentence limiting damages. The article states, "[t]his right of [Plaintiff Severstal] shall not entitle [Severstal] to recover from [Defendant Praxair] any incidental, indirect, consequential or special damages or any part of the purchase price paid to any such other supplier, including but not limited to the difference between the price of such other supplier and the prices specified herein." (Agreement at 26.)

Defendant Praxair acknowledges these two articles with their consequential damages provisions. (Def.'s Mot. at 1, n 3.) But Defendant Praxair does not address how these two damages provisions render its Article 21.1 argument untenable. Here, Article 16 and Article 24 limit certain types of damages–those specifically relating to purity standards and third party purchases. Reading the contract as a whole, then, the Court finds that Articles 16 and 24 support the interpretation that Article 21.1's consequential damages does not bar

every type of consequential damage that Plaintiff Severstal could allege. Each consequential damages provision in the agreement limits only the type of damages discussed in that specific article.

The Court therefore finds that partial summary judgment is not appropriate. The Court does not address Defendant Praxair's argument regarding what type of damages Plaintiff Severstal alleges, because the Court has found that Defendant Praxair's interpretation of the liability provision is improper and any further discussion would be premature at this time.

## IV. Conclusion

Because the Court finds that Defendant Praxair's reading of the Article 21.1 consequential damages provision is overbroad, the Court DENIES Defendant Praxair's motion for partial summary judgment. (Dkt. 34.)

SO ORDERED.

s/Nancy G. Edmunds                          
Nancy G. Edmunds
United States District Judge

Dated: September 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 27, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                          
Case Manager